**SO ORDERED.**

**SIGNED this 16th day of August, 2018.**



*Dale L. Somers*
_____
Dale L. Somers
United States Chief Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| **WB SERVICES, LLC,** | **CASE NO. 16-10759** |
| **DEBTOR.** | **CHAPTER 7** |
| **CARL B. DAVIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 17-5031** |
| **BEST SUPPLY CO., INC.,** | |
| **DEFENDANT.** | |
| **CARL B. DAVIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 17-5032** |
| **CONTROL-TECH, INC,** | |
| **DEFENDANT.** | |
| **CARL B. DAVIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 17-5044** |

| | |
|---|---|
| **WESTCO INTERNATIONAL, INC.,** | |
| **DEFENDANT.** | |

| | |
|---|---|
| **CARL B. DAVIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 17-5048** |
| **COYLE MECHANICAL SUPPLY, INC.,** | |
| **DEFENDANT.** | |

| | |
|---|---|
| **CARL B. DAVIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 17-5049** |
| **UNITED RENTALS (NORTH AMERICA), INC.,** | |
| **DEFENDANT.** | |

| | |
|---|---|
| **CARL B. DAVIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 17-5070** |
| **HAJOCA CORP.,** | |
| **DEFENDANT.** | |

### MEMORANDUM DECISION AND ORDER GRANTING THE
### MOTION OF THE KAAPA DEFENDANTS FOR SUMMARY JUDGMENT

The six defendants in the above-captioned adversary proceedings move as a group

for summary judgment on the Chapter 7 Trustee's preference claims against them under

11 U.S.C. § 547.[1]  Each defendant was a supplier of materials or equipment to Debtor,

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C.
§§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District
Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's
bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or
arising in or related to a case under the Code, effective June 24, 2013.  D. Kan. Standing Order No. 13-1,
*printed in* D. Kan. Rules of Practice and Procedure at 193 (March 2018).  Furthermore, this Court may

Case 17-05031    Doc# 44    Filed 08/16/18    Page 2 of 24

who was the general contractor for construction of a project on property owned by KAAPA Ethanol, LLC (KAAPA). The defendants are referred to collectively as the KAAPA Defendants.[2] Within 90 days before Debtor filed for relief under Chapter 7, each defendant was paid on a past due account with a check issued by KAAPA that was payable jointly to Debtor and that defendant. The Trustee seeks to recover the payments as preferential transfers. In a joint motion for summary judgment, the KAAPA Defendants asserted they were all entitled to summary judgment on some or all of the Trustee's claims because Debtor had no interest in the funds they were paid, as required for the payments to qualify as preferences under § 547(b).[3] After reviewing the pleadings, the Court asked the KAAPA Defendants to file a supplemental brief addressing the § 547(c)(1) new value defense, which they had all asserted in their answers. The Court has received and studied that brief, the Trustee's response, and the KAAPA Defendants' reply, and is ready to rule. For the following reasons, the Court grants the

---

hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). There is no objection to venue or jurisdiction over the parties.
    Future references to the Bankruptcy Code in the text will be to the section number only.

    [2] The Trustee's complaints against defendants Best Supply Co., Inc., Coyle Mechanical Supply, Inc., and Hajoca Corp. seek to recover multiple preferential transfers, only one of which was made by KAAPA. For these defendants, the motion for summary judgment is, in effect, a motion for partial summary judgment.

    [3] The appearances are as follows. Defendants Best Supply, Control-Tech, and Westco International appear by W. Thomas Gilman of the Hinkle Law Firm LLC. United Rentals appears by Shannon D. Wead of Foulston Siefkin LLP and Paul M. Schrader of Fullerton & Knowles, PC. Coyle Mechanical Supply appears by Robert M. Pitkin of Horn Aylward and Bandy, LLC, and Joel A. Kunin of Goldenberg Heller & Antognoli, PC. Hajoca appears by James F. Freeman III of Swanson Midgley, LLC. The Chapter 7 Trustee, Carl B. Davis, appears by Kenneth H. Jack of Davis & Jack, L.L.C.

3

KAAPA Defendants' motion for summary judgment.

**UNCONTROVERTED FACTS**.

On February 4, 2015, KAAPA entered into a contract (the Prime Contract) with Debtor for the installation of two centrifuges and the expansion of some existing facilities on property KAAPA owned in Nebraska (the Project). At various times in 2015 and 2016, the KAAPA Defendants supplied materials or equipment to Debtor for the Project. The Prime Contract required Debtor to pay for everything necessary to complete the Project, including labor, materials, and equipment, and to deliver the Project free of liens. Debtor's applications for payment by KAAPA were to be certified and accompanied by lien waivers. KAAPA was authorized to withhold payment to the extent necessary to protect KAAPA from any loss for which Debtor would be responsible because it failed to pay its subcontractors or suppliers for labor, materials, or equipment.

KAAPA's property was collateral for a loan it owed to Farm Credit Services of America. The deed of trust securing the loan required KAAPA to "warrant and defend the property . . . against all claimants whomsoever."[4] The credit agreement obligated KAAPA to pay all liens, judgments, or assessments against the property.

In mid-January 2016, KAAPA became aware that Debtor had fallen behind on payments to the subcontractors and suppliers on the Project. In mid-February, KAAPA requested that Debtor provide a list of all its unpaid bills on the Project. On February 17,

---

[4] Case 17-5031, doc. 19-4, app. exh. 7, at ex. B.

4

2016, Debtor contacted KAAPA and asked it to wire approximately $590,000, the amount Debtor claimed it was owed on the Project, to Debtor, promising that the same day, it would mail checks totaling approximately $308,000 to the unpaid suppliers and subcontractors on the Project. KAAPA rejected that proposal because it was not assured that Debtor would actually pay the suppliers and subcontractors. On February 29, 2016, KAAPA responded with a proposal that it would issue checks payable to Debtor and the subcontractors and suppliers jointly, if there were no disputes about the amount owed and the subcontractors and suppliers waived their lien rights.

After negotiations and the exchange of several drafts, an agreement for paying the subcontractors and suppliers was reached on March 10, 2016. Under the agreement, Debtor was required to provide KAAPA a list of all its open vendor accounts payable as of February 29, 2016. All amounts owed were to be paid to each subcontractor or supplier in the form of a check issued by KAAPA and made payable jointly to Debtor and the subcontractor or supplier. Debtor agreed to immediately endorse each check and forward it to the other joint payee. Only after all the lien waivers were received from every subcontractor or material supplier would KAAPA pay Debtor any remaining amount owed to Debtor under the Prime Contract.

The statement of uncontroverted facts includes details regarding the payments made to each of the KAAPA Defendants. As of early March 2016, invoices for dates as early as October 2015 and as late as mid-February 2016 for services and supplies for the Project were outstanding. For each defendant except Westco, soon after March 10,

5

2016, when Debtor and KAAPA agreed to the payment procedures, KAAPA contacted the subcontractor or supplier, informing each of the agreement and asking it to sign a lien waiver provided by KAAPA in order to have a joint check issued for the amount it was owed. The lien waivers were executed and returned to KAAPA. KAAPA then issued a joint check payable to Debtor and the subcontractor or supplier, and sent the check to Debtor, who endorsed and forwarded it to the subcontractor or supplier, who then deposited the check into its own account.

Westco had filed a mechanic's lien on March 16, 2016. Counsel for Westco and KAAPA negotiated an agreement for Westco to release its lien in exchange for payment of the amount it was owed through a joint check issued to Debtor and Westco, which Debtor endorsed and forwarded to Westco.

The six joint checks issued by KAAPA were in the total amount of $263,609.03. After receiving the lien waivers and making the payments, KAAPA made its final payment to Debtor.

Debtor filed for bankruptcy relief under Chapter 7 on April 28, 2016. At various times between February 24, 2017, and April 6, 2017, the Chapter 7 Trustee filed the above-captioned adversary proceedings against the KAAPA Defendants, seeking among other things, to recover as preferential transfers the payments made through the joint checks KAAPA issued to Debtor and the KAAPA Defendants. Each KAAPA Defendant answered raising numerous affirmative defenses. On November 2, 2017, all the KAAPA Defendants joined in filing a motion for summary judgment predicated on only one of

6

those affirmative defenses — whether Debtor's rights in the joint checks constituted an interest of Debtor in property under § 547(b). The Trustee responded, and the KAAPA Defendants filed a reply brief. After thoroughly reviewing the summary judgment pleadings, the Court requested supplemental briefing on the § 541(c)(1) new value defense. The KAAPA Defendants' brief, the Trustee's response, and the KAAPA Defendants' reply have now been filed.

## ANALYSIS.

### A. THE KAAPA DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE THEORY THE TRUSTEE HAS FAILED TO PROVE THAT DEBTOR HAD AN INTEREST IN THE PROPERTY TRANSFERRED TO THEM.

#### 1. The Court's Opinion in *Davis v. Kice Industries, Inc.*

Before the requested supplemental briefing in these cases was complete, *Davis v. Kice Industries, Inc.*,[5] was placed under advisement. Like these cases, *Kice* was a preference action filed by the Chapter 7 Trustee of Debtor WB Services. Within 90 days preceding Debtor's Chapter 7 filing, EKAE, the owner of a construction project, paid Kice, Debtor's subcontractor, on a past due account using a joint-payee check. The Trustee filed a preference action, and Kice filed a motion for summary judgment. Like the KAPPA Defendants in these cases, Kice contended that the joint-check payment did not transfer an interest of Debtor in property. Alternatively, Kice contended that if all of the elements of a preferential transfer were present, Kice was entitled to summary

---

[5] Case no. 16-10759, Adv. no. 17-5074.

7

judgment under the new value defense of § 547(c)(1), the defense which the Court asked these KAAPA Defendants to brief.

The Court's decision in *Kice* has been issued.[6] The Court rejected the argument that Kice was entitled to summary judgment because the payment did not transfer an interest of Debtor in property, and held that the transfer to Kice by the joint check was preferential. The Court then thoroughly examined the new value defense and concluded that it may provide a defense for Kice, although the uncontroverted facts were insufficient for the Court to rule in Kice's favor. The Court said Kice had not shown that EKAE had a right to setoff or indemnification when it made the payment to Kice, and assuming EKAE had such a right, the facts were insufficient for the Court to determine whether the right would extend to the full amount of the preferential transfer. When ruling on the KAAPA Defendants' motion for summary judgment, the Court relies on its decision in *Kice*.

### 2. Only transfers of interests of Debtor in property may be avoided as preferential.

Section 547(b) grants the Trustee the right, under stated circumstances, to avoid "any transfer of an interest of the debtor in property." Transfers of any legal or equitable interests of the debtor in property that would have become property of the bankruptcy estate under § 541 but for the transfer may be avoided.

---

[6] *Davis v. Kice Industries, Inc. (In re WB Services, LLC)*, __ B.R. __, 2018 WL 3155110 (Bankr. D. Kan. June 25, 2018).

**3. The Tenth Circuit's *Davidson* opinion.**

When arguing that Debtor had no interest in the payments made by the joint-payee checks, the KAAPA Defendants rely on the Tenth Circuit's opinion in *Davidson*,[7] as did the defendant in Kice.  In *Davidson*, a bank had sued a general contractor to enforce a security interest in two accounts receivable the contractor owed a Chapter 11 debtor for goods it bought from the debtor after the debtor filed bankruptcy.  The debtor had bought materials from two suppliers and resold them to the general contractor for use on a construction project, but not paid the suppliers.  The general contractor's agreement with the project owner required it to deliver the project free of mechanics liens.  The general contractor issued a joint check to one of the suppliers and the debtor to pay for the materials from that supplier.  The other supplier had filed a lien on the project, and the general contractor paid that supplier directly in return for the release of its lien.  After that, the debtor advised the general contractor about the bank's security interest in the debtor's accounts receivable and that the debtor would not authorize the payment of those accounts to anyone but its bankruptcy estate.

In *Kice*, this Court described the Tenth Circuit's rulings in *Davidson* this way:

> [T]he Tenth Circuit affirmed the bankruptcy court's finding that Utah law would permit a general contractor who pays a supplier in order to prevent or discharge a lien to set that payment off against amounts it owes to the defaulting subcontractor. . . . It relied on "those cases holding that when a general contractor pays a supplier on the basis of an

---

[7] *Zions First Nat'l Bank, N.A., v. Christiansen Bros., Inc. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560 (10th Cir. 1995).

9

independent legal obligation, those payments do not become part of the bankruptcy estate." Because [the general contractor] paid the suppliers as a result of an independent legal duty imposed by the contract between [the general contractor] and the project owner to deliver the project free of mechanics liens, such payments were available for setoff against the debt that [the general contractor] owed the debtor "and are not considered part of the bankruptcy estate." In a footnote, the Tenth Circuit also stated that "[t]he funds paid by [the general contractor] to [one of the suppliers] by joint payee check are also excluded from the bankruptcy estate under the doctrine of earmarking." Accordingly, there was no violation of § 363(c)(2), addressing the use of cash collateral. There also was no violation of the § 362 stay, which generally applies to actions with respect to prepetition property of the debtor and not to the setoff of mutual postpetition debts.[8]

### 4. Debtor's interest in the funds paid to the KAAPA Defendants by the joint-payee checks was not removed from the bankruptcy estate by the earmarking doctrine.

Like Kice, the KAAPA Defendants rely on *Davidson* for the proposition that

Debtor had no interest in the funds they received because the funds were removed from

its bankruptcy estate by the earmarking doctrine. The Court rejected that argument in

*Kice*, and for the same reasons, rejects it in this case. Concerning earmarking, the Court

stated:

> Earmarking is a judicially-created doctrine that precludes the avoidance of transfers of property "when a new creditor pays a debtor's existing debt to an old creditor." Because it is a judicially-created exception to the definition of a preferential transfer, the doctrine is narrowly construed. . . .
> In the Tenth Circuit, the circumstances where the

---

[8] *Kice*, __ B.R. __, 2018 WL 3155110 at *4 (citations omitted).

10

earmarking doctrine may apply to provide a defense to preference liability are unclear. The Tenth Circuit BAP in *Moses*, after thoroughly examining case law and policy considerations, concluded that "when determining whether a transfer is avoidable under § 547, the earmarking doctrine should not be extended beyond codebtor cases," where "the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor." . . .

The Tenth Circuit has not decided whether the doctrine should be so limited. In *Marshall,* the Circuit cited *Moses,* but did not address its analysis, and stated that "[e]armarking, even if extended beyond the codebtor context, *only* applies when the [new] lender *requires* the funds be used to pay a specific debt." It then held that the extended doctrine would not provide a defense to the preferential transfer claim against credit card lender MBNA where, within 90 days prepetition, debtors used their Capital One credit card accounts to make payments on their MBNA accounts. Capital One had not restricted the debtors' use of the loan proceeds; it had simply honored their instructions to pay MBNA. The earmarking doctrine was therefore inapplicable.[9]

In this case, the payment of Debtor's suppliers by the joint-payee checks issued by KAAPA does not come within the scope of the earmarking doctrine as stated in either *Moses* or *Marshall*. KAAPA was not a guarantor of Debtor's obligations to the subcontractors and suppliers involved in the Project. KAAPA was not a surety on the Project. KAAPA was not a lender advancing funds specified (earmarked) for payment to the subcontractors or suppliers. KAAPA was the owner of the Project and owed Debtor for work done on the Project. The joint checks transferred funds to the subcontractors

---

[9] *Id.*, __ B.R. at __, 2018 WL 3155110 at *5 (quoting *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645, 646, & 651 (10th Cir. BAP 2000) and *Parks v. FIA Card Services, N.A. (In re Marshall)*, 550 F.3d 1251, 1257 (10th Cir. 2008)).

and suppliers that would otherwise have been disbursed to Debtor for payment to those same subcontractors and suppliers.

In *Kice*, after an extended analysis, the Court concluded that the Tenth Circuit's footnote in *Davidson* that "the funds paid by [the general contractor] to [a supplier of goods to the debtor, a subcontractor,] by joint check are also excluded from the bankruptcy estate under the doctrine of earmarking" was not controlling.[10]  It found that *Davidson* was factually distinguishable; that *Davidson*, decided in 1995, was inconsistent with the Tenth Circuit's more recent 2008 decision in *Marshall*; and that the authorities relied on by *Davidson* were not persuasive.  After noting that decisions are not uniform in their application of the earmarking doctrine in joint-check situations, this Court found that the decisions holding that a debtor has an interest in a joint check are better reasoned. The same analysis applies here.

For the foregoing reasons, the Court rejects earmarking as a defense to the preference actions against the KAAPA Defendants.

### 5.  The funds paid to the KAAPA Defendants are not excluded from the bankruptcy estate under the theory that KAAPA had an independent obligation to make the payments.

As an alternative to the earmarking doctrine, the KAAPA Defendants argue that the joint-payee checks did not transfer an interest of Debtor in property because of the

---

[10] *Id*., __ B.R. at __, 2018 WL 3155110 at *6 (quoting *Davidson*, 66 F.3d at 1568, n. 10).

12

independent obligation doctrine,[11] as stated in *Davidson*. Under that doctrine, "when a general contractor pays a supplier on the basis of an independent legal obligation, those payments do not become part of the bankruptcy estate."[12] The rationale is that because of the independent obligation, the funds used were those of the payor, not the debtor.[13] In *Davidson*, where the general contractor had paid suppliers to the debtor, that independent legal obligation arose from the construction contract that obligated the general contractor to deliver the project free and clear of liens. Other cases have found a general contractor to have such an obligation to pay suppliers under payment bonds.[14]

But this is not a case where a general contractor paid suppliers because it had a duty to do so under the construction contract or because of a payment bond. In this case, the owner of the Project paid the subcontractors and suppliers. The Defendants do not provide and the Court's own research has not located any cases applying the independent obligation rationale when the parties acted in these capacities. Further, the construction documents did not impose an independent obligation on KAPPA to pay the KAAPA

---

[11] This argument is closely related to the § 541(c)(1) contemporaneous exchange for new value defense, discussed below. An essential difference between the defense and the independent obligation doctrine is the allocation of the burden of proof. The Trustee has the burden to prove the elements of a preferential transfer, and the transferee the burden to prove the defense. Where the facts relevant to both are known to the transferee but not known to the Trustee, they are better considered in the context of evaluating the defense.

[12] *Davidson*, 66 F.3d at 1567.

[13] *See Crocker v. Braid Electric Co. (In re Arnold)*, 908 F.2d 52, 55-56 (6th Cir. 1990).

[14] *Gold v. Alban Tractor Co., Inc.*, 202 B.R. 424 (E.D. Mi. 1996), *aff'd by unpub. op. sub nom. In re Gray Electric Co.*, 142 F.3d 433, available at 1998 WL 109989 (6th Cir. 1990); *Tri-Co., Inc. v. Star Building Systems (In re Tri-Co., Inc.)*, 221 B.R. 606 (Bankr. D. Mass. 1998).

Defendants if Debtor failed to so do. The Prime Contract allowed KAAPA to withhold payments to Debtor, the general contractor, if the suppliers or subcontractors were not paid, but it did not obligate KAAPA to make the payments to the suppliers and subcontractors. The Court declines to extend the independent obligation doctrine beyond the situations in which it has previously been applied.

The KAAPA Defendants argue that an independent obligation arose under mechanics lien laws and the loan documents between KAAPA and its lender. The Court rejects these contentions. "The object of the mechanic's lien [is] to secure the claims of those who have contributed to the erection of a building,"[15] even though there is no contractual relationship between the claimant and the property owner.[16] The mechanics lien statutes cannot be used to create a claim which is enforceable other than as a lien.[17] In other words, the liability created is in rem, not in personam.[18] The existence of actual or potential mechanics liens against KAAPA's property did not create an obligation for KAAPA to pay the KAAPA Defendants. It only provided KAAPA with the motivation to assure Debtor paid the KAAPA Defendants, which KAAPA did through the joint-check agreement. As discussed below, the release of a mechanics lien or of a right to file a mechanics lien has been recognized as giving rise to a new value defense to a preferential

---

[15] *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 402, 529 N.W.2d 16, 20 (1995).

[16] 53 Am. Jur. 2d, *Mechanics' Liens*, § 1 (2018 update).

[17] *Id*. at § 5.

[18] *Id*.

14

transfer,[19] but not to support a ruling that Debtor had no interest in the funds transferred by the joint-payee checks.

Under the facts of this case, KAAPA's obligation imposed by the deed of trust and its credit agreement with Farm Credit Services was not an independent obligation that provides a defense to preference liability for the KAAPA Defendants. Neither agreement created an obligation of KAAPA to the Defendants. The agreements imposed a duty on KAAPA not to allow encumbrances on the property, but KAAPA fulfilled that obligation by ensuring that the money it owed Debtor was used to satisfy the subcontractors and suppliers who could file liens on the KAAPA property. Further, the notion that KAAPA made the payments solely for its own purpose of fulfilling its duties under the deed of trust is refuted by the joint-check agreement that governed the payments made to the KAAPA Defendants. It states, "We [KAAPA] have sought to ensure that in the course of making any payment to or *on behalf of [Debtor]* we can have adequate assurance that no liens are filed. . . . [I]t is apparent that [Debtor] cannot provide us with adequate assurance that payment to [Debtor] alone, without our direct involvement in also making payment to subcontractors and material vendors as well, will satisfy our need to make payment and also to avoid liens under the Nebraska Construction Lien Act."[20] There is no mention in the check agreement of KAAPA's obligations to its lender. The payments

---

[19] *See* J. Henk Taylor, *Structuring Construction Settlements to Avoid Preference Liability*, 9, No. 1 J. Amer. College of Construction Lawyers 3 (Jan. 2015), *available* on Westlaw.

[20] Doc. 19-7 at 4 (emphasis supplied).

were made on behalf of Debtor, not solely for the benefit of KAAPA. KAAPA's debt to Debtor under the Prime Contract was greater than the amounts owed to the KAAPA Defendants. KAAPA did not intend to use its own funds to pay the KAAPA Defendants.

The Court therefore rejects the contention that Debtor had no interest in the property transferred by the joint checks because KAAPA had an independent obligation to the KAAPA Defendants.

### 6. Debtor's lack of possession of the funds transferred by the joint checks does not mean it had no interest in the funds.

The KAPPA Defendants argue that Debtor did not have sufficient control of the funds paid to them for Debtor to have had an interest in the funds. In support, they cite *Marshall*, the Tenth Circuit opinion discussed above, which held the earmarking doctrine did not apply to credit card balance transfers. Before considering the earmarking doctrine, the Tenth Circuit determined that the debtors had an interest in the borrowed funds for purposes of § 541 under the dominion-or-control test and the diminution-of-the-estate test.[21] Under these tests, a particular transfer is a transfer of an interest of the debtor in property if "the debtor, even if never in actual possession of the [funds], exercises dominion or control over them as evidenced by an ability to direct their distribution,"[22] or "if it deprives the bankruptcy estate of resources which would

---

[21] The Tenth Circuit concluded that the payments to the old credit card creditor were "a debtor's discretionary use of borrowed funds to pay another debt. Such transactions are generally considered preferential transfers. The only exception to this rule is the earmarking doctrine." *Marshall*, 550 F.3d at 1257 (citations omitted).

[22] *Id*. at 1256.

16

otherwise have been used to satisfy the claims of creditors."[23]  As applied to the transfer of credit card balances, the Tenth Circuit found the transfer was "essentially the same as if Debtors had drawn on their Capital One line of credit, deposited the proceeds into an account within their control, and then wrote a check to MBNA."[24]

The Court finds that Debtor exercised control over the funds paid to the KAAPA Defendants.  The components of these transfers were stated in the joint-check agreement and were the following:  KAAPA owed Debtor funds for performance of the Prime Contract; Debtor determined the amount it owed to its subcontractors and suppliers; Debtor agreed that a portion of the funds KAAPA owed it could be used to pay the subcontractors and suppliers through the use of joint-payee checks; KAAPA issued checks jointly payable to Debtor and the KAAPA Defendants; Debtor endorsed the joint-payee checks; and Debtor delivered the checks to the KAAPA Defendants.  Through these transactions, Debtor controlled the payments to the Defendants.  The events that occurred are essentially the same as if KAAPA had paid Debtor and Debtor had then paid the KAAPA Defendants.

The fact that KAAPA would not have disbursed the funds to Debtor without the joint-check agreement does not equate to Debtor's lack of control over the funds.  Debtor could have refused to enter into the agreement or breached the agreement by not endorsing the joint-payee checks, in which case the payments would not have been

---

[23] *Id.*

[24] *Id.*

made.[25]

The Court finds that Debtor had an interest in the funds paid by the joint checks because it exercised control over the funds.

**7. Equitable considerations.**

Finally, the KAAPA Defendants argue that equitable considerations weigh in their favor. They argue that as a result of the transfers the Trustee seeks to avoid in this case, the suppliers and subcontractors were paid and KAAPA's property was not subjected to mechanics liens. Further, they assert that avoidance of the transfers as preferential would upset the established commercial expectations of the parties.

These arguments are powerful. However, the Court can grant the KAAPA Defendants summary judgment on the basis that Debtor had no interest in the money transferred to them only if the Trustee cannot possibly prove this element of his preference claims against them. Equitable arguments alone are not sufficient. On the facts presented, the Court concludes that the Trustee has satisfied his burden of proof.

**8. The Court rejects the KAAPA Defendants' assertion that the transfers were not transfers of interests of Debtor in property.**

For the foregoing reasons, the Court rejects the KAAPA Defendants' arguments that the Trustee has failed to prove that the transfers were transfers of interests of Debtor in property. No additional defenses to the Trustee's preference allegations were briefed,

---

[25] Further, Debtor's control is not negated because of KAAPA's right under the Prime Contract to withhold payments if Debtor failed to make payments properly to the subcontractors and suppliers. This right is better considered in connection with the § 541(c)(1) defense, discussed below.

18

so the Court concludes that the transfers were preferential.

## B.  THE KAAPA DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE UNCONTROVERTED FACTS SATISFY THE § 547(c)(1) NEW VALUE DEFENSE.

When moving for summary judgment, the KAPPA Defendants relied exclusively on the contention that the Trustee had failed to prove that the payments by the joint checks transferred an interest of Debtor in property.  At the Court's request, the KAAPA Defendants subsequently briefed the applicability of the § 547(c)(1) new value defense. It provides:

> (c) The trustee may not avoid under this section a transfer —
>
> > (1) to the extent that such transfer was —
> >
> > > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > >
> > > (B) in fact a substantially contemporaneous exchange.

"New value" is defined by § 547(a)(2) to include money and the "release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law."  The release of a lien comes within the definition.[26]  Section 547(c)(1) protects transfers that do not result in a diminution of the bankruptcy estate because the estate is replenished by an infusion of

---

[26] *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125, 127-28 (10th Cir. 1986).

assets roughly equal in value to those transferred.[27]

As this Court observed in *Kice*, "[t]ypically, the new value defense is applicable when the creditor who received the transfer from the debtor also provided the new value. However, new value may also be provided by a third party."[28]  This is called the indirect transfer theory of the new value defense.  "[T]he 'indirect transfer' defense theory is asserted when:  (1) the debtor owes a debt to its creditor; (2) the creditor has recourse in some form against the third party if the debtor defaults; and (3) . . . the creditor could exercise its rights against the third party, as a result of which the third party may invoke indemnification rights against the debtor."[29]  If the value provided to the debtor equals or exceeds the amount of the preferential payment to the creditor, the estate is not diminished and § 547(c)(1) provides a defense.

In this case, the KAAPA Defendants rely on the indirect transfer theory of the new value defense.  They assert that the joint-payee-check agreement had three elements:  "(1) the KAAPA Defendants released their rights against the property; (2) KAAPA released payment to the debtor to which the debtor was not entitled in the absence of the transaction; and (3) those payments were transferred to the KAAPA Defendants.  There was an actually contemporaneous exchange that was intended to be

---

[27] *Moses*, 256 B.R. at 652.

[28] *Kice,* __ B.R. at __, 2018 WL 3155110 at *10.

[29] *Instrumentation and Controls, Inc., v. Northeast Union, Inc. (In re Instrumentation and Controls, Inc.)*, 506 B.R. 677, 679 (Bankr. E.D. Pa. 2014).

contemporaneous by all parties and that provided value to the debtor to which it was not otherwise entitled."[30]

In *Kice*, this Court held that the indirect-new-value defense was applicable when the Chapter 7 Trustee sought to recover as preferential a payment made to Kice, a subcontractor of Debtor, by a check issued by EKAE, the project owner, that was payable jointly to Debtor and Kice, because Kice had simultaneously released its inchoate lien rights on the project. The Court reasoned that under *Philip Services Corp.*,[31] and similar cases, the elements of the new value defense would have been satisfied if Kice had filed a subcontractor's lien statement before receiving the payment from Debtor. The Court then examined *J.A. Jones*, which, based on the commercial realities of the construction industry, held the defense is applicable when the lien rights that were released were inchoate.[32] This Court found the reasoning of *J.A. Jones* to be sound and stated:

> The filing of a lien statement is not critical to the estate's receipt of new value when the subcontractor is paid. The smooth functioning of the construction industry would be compromised if the filing of a lien were required for a subcontractor dealing with a financially-troubled general contractor to protect itself from a preference action. The purpose of the new value defense "is to encourage creditors

---

[30] Doc. 39 at 3.

[31] *Lovett v. Homrich, Inc. (In re Philip Services Corp.)*, 359 B.R. 616, 631-34 (Bankr. S.D. Tex. 2006).

[32] *Liquidation Committee v. Binsky & Snyder, Inc. (In re J.A. Jones, Inc.)*, 361 B.R. 94, 102-03 (Bankr. W.D.N.C. 2007).

> to continue to deal with troubled debtors without fear that
> they will have to disgorge payments received for value given."
> Requiring a subcontractor to file a mechanic's lien to assure it
> can retain a payment received from its general contractor
> would undercut that purpose.[33]

The Court finds that the analysis of *Kice* is applicable in this case, and that the elements of the new value defense have been established. KAAPA, as the owner of the Project, had the right under section 15.2.3 of the Prime Contract to "withhold a Certificate of Payment . . . to such extent as may be necessary in the Owner's opinion to protect the Owner from loss for which the Contractor is responsible . . . because of . . . failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment."[34] Before the transfers in issue, Debtor had requested payment of $590,000, the amount it claimed was due to it under the Prime Contract, but KAAPA denied the request. After the payment procedure was agreed to, KAAPA released $263,609.03 of those funds through the issuance of the joint-payee checks to Debtor and the KAAPA Defendants. Simultaneously, Defendant Westco International released its filed lien on the property and the other KAAPA Defendants released their inchoate lien rights.

Unlike the situation in *Kice*, there are no unresolved factual issues in this case. The Prime Contract provided KAAPA the right to withhold payment to Debtor when

---

[33] *Kice,* __ B.R. at __, 2018 WL 3155110 at *12 (*quoting* 5 *Collier on Bankruptcy*, ¶ 547.04[1] at 547-44).

[34] Doc. 19-4 at 20.

Debtor failed to pay its subcontractors, so that KAPPA had a right of setoff when it provided funds to obtain the release of the subcontractors' lien rights. The amount of money owed to Debtor and withheld by KAAPA exceeded the total of the joint-payee checks. The lien waivers, KAAPA's release of funds, and the payments to the KAAPA Defendants were intended to be and were in fact simultaneous.

The Trustee argues that the KAAPA Defendants are not entitled to summary judgment under the new value defense because the "new value which is alleged by the Defendants did not exist and was not given."[35] The Trustee fails to appreciate the interplay between the lien waivers and KAAPA's release of funds it owed to Debtor. It is these related events that reveal the new value that KAAPA provided to Debtor. As the *J.A. Jones* court stated, "this 'indirect transfer' theory holds that the release of the subcontractor's lien against the owner causes a coincident release of the owner's claim against the debtor, thereby creating new value to the debtor."[36] *Philip Services* described application of the indirect transfer theory as follows:

> Under the terms of the prime contracts between [the owner] and the Debtor, when [the subcontractor] filed its lien and gave notice of the lien, [the owner] had the right to withhold funds due Debtor. This was, effectively, a lien on Debtor's account receivable from [the owner] which was released, dollar for dollar, when the lien was released.[37]

---

[35] Doc. 40 at 4.

[36] *In re J.A. Jones*, 361 B.R. at 102 (citing *In re GEM Constr. Corp. of Virginia*, 262 B.R. 638, 646 (Bankr. E.D. Va. 2000)).

[37] *In re Philip Services Corp.*, 359 B.R. at 632.

KAAPA's release on receipt of the KAAPA Defendants' lien waivers of its contractual right to withhold payment to Debtor provided new value to Debtor. Moreover, Debtor had a duty to deliver the Project to KAAPA free of liens. If the payments had not been made, the liens had not been waived, and KAAPA had satisfied the liens, Debtor's claim against KAAPA for work performed on the Project would have been reduced by the amount of KAAPA's payments. Debtor's estate was not diminished by the transfers to the KAAPA Defendants.

**CONCLUSION**

For the foregoing reasons, the Court grants summary judgment to each of the KAAPA Defendants on the Trustee's preference claims seeking to recover payments KAAPA made by joint checks within 90 days preceding Debtor's bankruptcy for amounts due for work performed or goods supplied for the KAAPA Project. Although the transfers were preferential, the KAAPA Defendants have sustained their burden to prove they are protected by the new value defense of § 547(c)(1).

**IT IS SO ORDERED.**

**# # #**